IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION


```
IN THE UNITED STATES DISTRICT COURT
   FOR THE SOUTHERN DISTRICT OF GEORGIA
              DUBLIN DIVISION
```

RANDY EUGENE COLEMAN,
STAR LATOSHA YOUNG, and all
other persons similarly
situated,

    Plaintiffs,

    v.                       CV 315-035

MIDDLE GEORGIA PROBATION, LLC,

    Defendant.

O R D E R

Before the Court is Plaintiffs' Motion to Certify Issues to the Supreme Court of Georgia (doc. no. 38). For the following reasons, Plaintiffs' motion is **DENIED**.

I. BACKGROUND

Under O.C.G.A. 42-8-100(g) (2006) (current version at O.C.G.A. § 42-8-101 (2016)), the chief judge of any court, with the approval of the local governing body, had authority to enter into an agreement with a private company to provide probation supervision services for misdemeanor offenders.[1] Defendant provides such services for the State Court of Emanuel County, Georgia, and the Municipal Court of Swainsboro, Georgia, pursuant to an agreement that was

---

[1] The amended statute provides that the local governing body, instead of the chief judge, is a party to the agreement. O.C.G.A. § 42-8-101(a)(1).

executed on April 15, 2011 ("Private Probation Agreement"). (Doc. No. 40, Ex. B, at 92.) In exchange for Defendant's services, probationers must pay Defendant fees commensurate with the rates described in the Private Probation Agreement. (Id. at 101.)

Plaintiffs Randy Eugene Coleman and Star Latosha Young were both placed on probation after pleading guilty to misdemeanor charges in the State Court of Emanuel County and the Municipal Court of Swainsboro, respectively. (Id., Exs. C, E, at 109, 117; Am. Compl., Doc. No. 40, ¶¶ 12, 18.) Pursuant to the terms of their probation, Plaintiffs were placed under Defendant's supervision and were required to pay probation supervision fees. (Am. Compl. ¶¶ 14, 18.)

On April 7, 2015, Plaintiffs brought this putative class action alleging that the Private Probation Agreement and O.C.G.A. 42-8-100(g) violated the Fourteenth Amendment of the U.S. Constitution and Georgia law.[2] Plaintiffs contend that these violations void the Private Probation Agreement and that Plaintiffs are therefore entitled to recover all probation supervision fees paid to Defendant. (Id. ¶¶ 58, 74, 86, 98, 111.)

---

[2] Plaintiffs' counsel have brought similar class action lawsuits against different private probation companies. See, e.g., Brinson v. Providence Cmty. Corr., Inc., 2016 WL 9651775 (S.D. Ga. Mar. 31, 2016); Keen v. Judicial Alternatives of Ga., Inc., 124 F. Supp. 3d 1334 (S.D. Ga. 2015).

2

On November 12, 2015, this case was stayed pending resolution of the appeal in a similar case, <u>Keen v. Judicial Alternatives of Ga., Inc.</u>, 124 F. Supp. 3d 1334 (S.D. Ga. 2015). (Doc. No. 28.) On January 17, 2017, one month after the Court held a status conference discussing, among other things, the impact of Eleventh Circuit's decision in <u>Keen v. Judicial Alternatives of Georgia, Inc.</u>, 637 F. App'x 546 (11th Cir. 2015), the Court granted Plaintiffs' unopposed motion to amend their complaint. (Doc. No. 39.) Plaintiffs now move the Court to certify the following questions to the Georgia Supreme Court:

1. Under the Constitution of the State of Georgia, is the establishment of the amount of fees a misdemeanor probationer can be sentenced to pay for probation supervision a matter for legislative action by the Georgia legislature?

2. Does the application of the Georgia Private Probation Statute, O.C.G.A. § 42-8-100, *et seq.*, under the Defendant's contracts offend the due process clause of the Georgia Constitution?

3. Is imprisonment of misdemeanor probationers for failure to pay debts allegedly owed to a private, for-profit corporation imprisonment for debt forbidden by Art. 1, Sec. 1, ¶ 23 of the Constitution of the State of Georgia?

4. Is a contract with a private company to provide probation supervision services to a court void under Georgia law if it has not been approved by the current local government and the current chief judge of that court?

5. Is a contract with a private company to provide probation supervision services to a

Georgia court void if it has not been filed with the County and Municipal Probation Advisory Council of Georgia in accord with the requirements of Rule 503-1-.22 of the Rules and Regulations of the State of Georgia?

6. Does the Georgia Private Probation Statute, codified at O.C.G.A. § 42-8-100, *et seq.*, authorize courts to enter into contracts with a private company under which the private company is compensated solely by fees paid by probationers?

7. Does it offend the due process clause of the Georgia Constitution for officers of a Georgia court, including probation officers, to have systemic conflicts of interest, including conflicting financial interests?

(Doc. No. 38.)

## II. DISCUSSION

Federal courts may certify "novel, unsettled questions of state law" to a state's highest court for resolution. Arizonans for Official English v. Arizona, 520 U.S. 43, 76-77 (1997). Indeed, "a federal court should certify the question to the state supreme court to avoid making unnecessary Erie 'guesses' and to offer the state court the opportunity to interpret or change existing law." Simmons v. Sonyika, 394 F.3d 1335, 1339 (11th Cir. 2004) (internal quotations omitted). Still, the decision to certify a question is a matter of discretion and courts should consider, among other things, the effect of delaying the litigation process.

4

Smigiel v. Aetna Cas. & Sur. Co., 785 F.2d 922, 924 (11th Cir. 1986) ("Although we are *Erie*-bound, we may exercise an option to make an educated guess as to how the Florida courts would resolve the issue."); State of Fla. ex rel. Shevin v. Exxon Corp., 526 F.2d 266, 275-76 (11th Cir. 1976) (refusing to certify a question of state law because, *inter alia*, litigation had proceeded for more than two and one-half years).

Additionally, a federal court's power to certify questions to the state's highest court is constrained by state law. Lehman Bros. v. Schein, 416 U.S. 386, 390 (1974). Although Georgia law allows district courts to certify questions of state law to the Georgia Supreme Court, O.C.G.A. § 15-2-9(a), the questions must be narrowly defined and supported by concrete facts. Bulloch Cnty. Hosp. Auth. v. Fowler, 182 S.E.2d 443, 445-46 (Ga. 1971) (refusing to answer a question that was "so broad and indefinite as to admit of one answer under one set of circumstances, and a different answer under another." (internal quotations omitted)). The Georgia Supreme Court may choose to answer specific questions, but it will not resolve an entire case. Womack v. U.S. Fidelity Guar. Co., 69 S.E.2d 188, 189 (Ga. 1952). Like its federal counterpart, the Georgia Supreme Court is seldom

5

inclined to issue an advisory opinion. Hinson v. First Nat'l Bank in Waycross, 144 S.E.2d 765, 768 (Ga. 1965).

As a preliminary matter, the Court recognizes that it has been two years since Plaintiffs first filed their complaint. (Doc. No. 1.) The prospect of committing to a process to could significantly delay resolution should be approached with caution.

Plaintiffs' briefing contains a bare assertion that the questions they propose address unresolved issues of state law that implicate important state interests. Nevertheless, many of Plaintiffs' questions are broad and are unsupported by facts in the record. For example, Plaintiffs' third question is presumably an as-applied challenge addressing the possibility that the Private Probation Agreement may lead to the imprisonment of offenders who fail to pay probation supervision fees. An as-applied challenge is, of course, a fact-intensive inquiry. Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1308 (11th Cir. 2009). Yet Plaintiffs fail to identify the circumstances under which their failure to pay supervision fees resulted in their incarceration. Because the Georgia Supreme Court would refuse to consider such a question, certification would needlessly waste the parties' resources.

Even if some of Plaintiffs' questions could be answered by referencing the current record, certification is still inappropriate as this case is in the early stages of litigation. To date, neither party has briefed the merits of Plaintiffs' amended complaint. Additional litigation will refine any state law issues in this case, which would in turn save judicial resources if the Court should ever find certification is proper.

Plaintiffs have failed to provide narrow, well-defined questions of state law that could be certified to the Georgia Supreme Court. Certifying Plaintiffs' questions before developing the record in this case would further delay an already protracted lawsuit. Accordingly, under the current record, Plaintiffs' Motion to Certify Issues to the Supreme Court of Georgia (doc. no. 38) is **DENIED**.

**ORDER ENTERED** at Augusta, Georgia, this 12th day of April, 2018.

*/s/ Dudley H. Bowen, Jr.*
UNITED STATES DISTRICT JUDGE